## Supreme Court—General Term—Second Department.

### May, 1885.

## PEOPLE v. TYRRELL.

### CHALLENGE—MISCONDUCT OF JUROR.

Upon a trial one called as a juror testified, under challenge, that he had a strong impression, that he could try the case on the evidence, but that his impression would be in his mind and govern him to some extent ; that that impression would have to be removed by evidence, and that to that extent it would govern his deliberation ; that he had no special doubt that he could render an impartial verdict upon the evidence. The trial judge overruled the challenge. *Held*, error, that the juror was disqualified.

Such error is not cured by the fact that defendant then peremptorily challenged the juror, where it appears that defendant exhausted his peremptory challenges before a jury was completed.

During the trial a juror clandestinely visited the place where the offense was committed, and held some conversation with defendant. *Held*, that this was such misconduct as would require the granting of a new trial.*

The defendant did not waive his rights by failing to disclose this conduct of the juror, for he was entitled to remain silent and require that the prosecution should convict him by legitimate evidence in accordance with the forms and rules prescribed for the due administration of the criminal law.

APPEAL by defendant, Martin Tyrrell, from a judgment of the Court of Sessions of Kings county, Hon. HENRY A.

***

* See People *ex rel.* Munsell *v.* Oyer and Terminer, *infra,* 208.

Moore, presiding, of May 2, 1884, convicting him of keeping a disorderly house.

Upon the trial, William H. Palmer, having been duly called as the fourth juror and a challenge interposed, the same was duly tried by the court, and the juror was examined as follows :

*By Mr. Wernberg.*—I have a strong impression on the point.

Q. What point?

A. In reference to the case.

Q. Have you heard of the case?

A. Yes.

Q. Where did you hear of it?

A. Read it in the newspapers.

Q. You received the impression you have from reading it in the newspapers?

A. And in conversation with other parties.

Q. Was it such an impression as would prevent you rendering a correct verdict upon the evidence heard?

A. It would take more evidence than it would if I had not heard of the case.

The Court.—That don't answer the question.

A. No, sir, it would not.

*Mr. Wernberg.*—You have read of it in the papers how many times?

A. That I cannot tell.

Q. More than once?

A. That is my impression.

Q. How many times have you discussed the question with any person? Has that been with people in whom you have confidence?

A. Yes, sir.

Q. The result of this conversation is to have formed in your mind a very strong impression?

A. Yes.

Q. Has it amounted to a positive opinion?

A. No, sir; I know nothing except by hearsay.

Q. You have a strong impression?

A. Yes.

Q. You don't think it amounts to a positive opinion?

A. No.

Q. Then you would require testimony to be introduced to disabuse your mind of that impression?

A. Yes, I think I could try the case on the evidence produced here, but still that impression would be in my mind; that impression would govern me to some extent; but evidence would have to remove that impression before I could give a candid opinion.

Q. And that impression would govern your views respecting the testimony that might be introduced?

A. You get me down too fine. I don't think I understand your meaning.

Q. You say this impression you have would govern your deliberations in determining on the evidence before you. You say now you have a strong impression respecting the merits of this case?

A. Yes.

Q. Would or would not that impression govern your deliberations on the testimony in the case?

A. That impression would have to be removed, and to that extent it would govern it.

Q. It would govern your views of the testimony introduced?

A. I cannot answer that.

Q. It would affect your views of the testimony?

A. To some extent.

Q. Then, if that is so that your deliberations would be governed by the opinion you now have, your deliberations on the testimony would be governed by the impression you now have. If the present impressions would govern your views to a certain extent, and your deliberations to a certain extent, upon the testimony adduced before you?

A. I cannot answer you how it would be governed by the testimony. As far as I have read or heard of the case I have formed an opinion with relation to the matter, it would take more evidence than what I have heard.

The Court.—Could you, notwithstanding any opinion you have formed or impressions you have about this case, if you

were sworn as a juror, hear the evidence, and render an impartial verdict upon that evidence and upon nothing else?

A. I think I·could.

Q. Have you any doubt about it?

A. No; no special doubt.

Hereupon the challenge was submitted to the court, to be determined whether the same had been proved or disproved, and the court disallowed said challenge, and ordered the juror to be sworn in the case, and said decision was duly entered in the minutes, and the defendants duly excepted to the ruling.

The juror was then challenged peremptorily by the defendant.

The defendant's peremptory challenges were exhausted before the jury was completed.

It appeared in the motion for a new trial, that after the evidence had been summed up on both sides, on the evening of April 23, that the court adjourned until the next day; but immediately upon the adjournment one of the jurors impaneled in the case, went to the defendant's house—the premises referred to in the indictment and evidence—and there conversed with the defendant and others about the case; and according to the defendant's statement—denied, however, by the juror—there was some talk about a specific sum of money to influence the action of the juror in the case. The juror's testimony is to the effect that there was some intimation to this effect proceeding from the defendant, while the defendant charges that a corrupt proposition came from the juror. But the juror, in his affidavit, swears: "At some time on the way it occurred to me to walk through Clinton street, and see for myself where the place of Tyrrell .was. I was familiar with the general locality, but not with the surroundings of the place. As I passed 'The Windsor' it occurred to me that I would step in and see for myself what sort of a place it was. Much of the testimony had been elicited amidst some confusion, particularly that of the French women, localities in the house had been referred to, which I did not clearly understand." Again: "While he (defendant) was gone, I took a look at the premises."

*James Troy*, for defendant, appellant.—I. The court erred in disallowing the challenge to the juror Palmer, and in ordering him to be sworn on the jury. He was confessedly under the influence of bias and prejudice; had formed an impression and opinion from reading, hearing of and talking about the case, which he still entertained, and declared that unless removed by evidence that impression and opinion would influence and govern his deliberations on the testimony. People *v.* Casey, 2 *N. Y. Crim.* 194; see Balbo *v.* People, 80 *N. Y.* 484; Cox *v.* People, 80 *N. Y.* 500; People *v.* Cornetti, 1 *N. Y. Crim.* 303.

II. The defendant was injured by the ruling of the case upon the challenge, as the juror was excluded from the panel by a peremptory challenge from the defendant, because before the jury was fully completed he had exhausted his peremptory challenges, and was, therefore, deprived of a challenge which he could and would have afterwards used when his subsequent challenges for bias were disallowed. People *v.* Casey, 2 *N. Y. Crim.* 194.

III. The defendant's motion for a new trial should have been granted. The juror Parker, without the knowledge of the court, proceeded during the trial, and after the close of the testimony, to the premises mentioned in the indictment, for the purpose of examining the same, and "see for himself." He did so examine the premises. The defendant was not aware of the object or purpose of the juror, the same having been disclosed for the first time after the trial; the testimony of the juror upon this subject was introduced by the district attorney against the defendant, on a motion for a new trial.

*James W. Ridgway*, district attorney (*Almet F. Jenks*, assistant), for the people, respondents.

DYKMAN, J.—A careful examination of the case presented to us shows that the defendant has not been convicted in accordance with the rules of law provided to secure fair trials by impartial and competent jurors. Under the rule laid down by the court of appeals in People *v.* Casey, 96 *N. Y.* 115; 2 *N. Y. Crim. Rep.* 194; the disallowance of the challenge to

the juror, Palmer, was erroneous. On his examination he said : "I have a strong impression."

" Q. You don't think it amounts to a positive opinion? A. No, sir.

" Q. Then you would require testimony to be introduced to disabuse your mind of that impression? A. Yes; I think I could try the case on the evidence produced here, but still that impression would be in my mind, that impression would govern me to some extent; but evidence would have to remove that impression before I could give a candid opinion.

" Q. You say this impression would govern your deliberation in determining on the evidence before you? You say now you have a strong impression respecting the merits of this case? A. Yes.

" Q. Would or would not that impression govern your deliberation on the testimony in the case? A. That impression would have to be removed, and to that extent it would govern it."

So that the defendant would be required to introduce evidence to remove the strong impression of this juror before his verdict could be secured. In other words, it would be necessary for the defendant to show his innocence before he could obtain an acquittal. That would reverse the humane and salutary rule of our law which presumes the innocence of all men, and requires proof of guilt before conviction. It is true the examination proceeded further as follows :

" THE COURT.—Could you, notwithstanding any opinion you have formed or impression you have about this case, if you were summoned as a juror, hear the evidence and render an impartial verdict upon that evidence and upon nothing else? A. I think I could.

" Q. Have you any doubt about it? A. No; no special doubt."

All this meant was that the juror had no special or specific doubt, but as he had a general impression respecting the merits of the case, there was a general doubt about his ability to put that aside and render a verdict on the evidence. The decision of the trial judge overruling the challenge may be reviewed.

here on the evidence elicited on the examination, and our conclusion is that it was erroneous.

It is insisted on the part of the people that a new trial cannot be granted for an error committed on the trial of a challenge to the juror Palmer, who did not participate in the verdict; and for this position is cited section 455, subdivision 2, and section 485 of the Code of Criminal Procedure. When the Casey case was before the General Term* that was then supposed to be the rule; and as none of the jurors challenged on that case participated in the verdict it was supposed no error had been committed. But the Court of Appeals held otherwise, and decided that because the peremptory challenges were exhausted the defendant might have been harmed because his rights were abridged. The same state of facts existed here, and we follow the court of last resort.

Our conclusion is also that a new trial should have been granted by reason of the misconduct of the juror Parker. It is the object of our benign system of jurisprudence to obtain impartial, fair-minded men for jurors, and no view can be taken of the testimony respecting the visit of the juror to the house of the defendant that does not prove him guilty of great misconduct. He took in testimony on a view of the premises in a clandestine manner, and had some conversation with the defendant at the same time. This was much against the orderly administration of justice, and cannot be passed over in silence by the courts. Neither is it an answer for the public prosecutor to say the defendant should have exposed the transaction during the trial. That does not eradicate the vice from the conduct of the juror, or show that the substantial rights of the defendant have not been prejudiced. An accused person, placed on trial for a criminal offense, may sit still and remain silent and require the public prosecutor to convict him on legitimate testimony, in accordance with the forms and rules prescribed for the due administration of the criminal law. The conviction should be reversed and a new trial granted.

BARNARD, P. J., and PRATT, J., concur.

--------

* 2 N. Y. Crim. Rep. 187.