THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN CARPENTER, Appellant.

The existence in the mind of a person of an abstract opinion as to the propriety or impropriety of a certain defense in cases theretofore coming to his knowledge does not necessarily disqualify him from sitting as a juror in another case where such defense is intended to be made; it furnishes no evidence or presumption that he has any prejudice or bias against the defense when honestly interposed.

On the trial of an indictment for murder wherein the defense was insanity, a person called as a juror, after having stated under oath that he was unbiased in the present case and had no opinion as to the guilt or innocence of the defendant, testified, that if the defense of insanity was interposed he would have a prejudice against it, adding "my answer only implies that I believe the defense of insanity has been misused and abused. I am not prejudiced against a person who is insane. It is a prejudice against sham defenses." Also, that he did not think 'it would control or influence his judgment against the defense. *Held,* the incompetency of the juror was not successfully established.

Another juror, after he had testified that he would go into the jury-box with a bias against the defense of insanity, testified, that notwithstanding this, if accepted as a juror, he thought he could so divest his mind of the "opinion as to receive and consider the evidence without any bias or opinion against the prisoner," adding, "I have an opinion against the misuse of insanity." *Held,* that the juror was properly held competent.

The two jurors were challenged peremptorily by defendant. When the panel was completed he still had the right to fourteen peremptory challenges. *Held,* that the determination of the court as to the competency of the jurors, even if erroneous, could not have injured the prisoner, and so was not a ground for reversal.

The court, at the outset of the trial, gave notice that he should require the defendant to make such peremptory challenges as he desired, to each juror as he was called and examined and before he was sworn individually. Each of the jurors were examined and accepted by both parties before he was sworn. A peremptory challenge to one of the jurors was interposed by defendant's counsel after the juror had been individually sworn and the panel completed, but before they had been sworn in a body as a completed panel. The court rejected the challenge. *Held* no error. (Code of Crim. Pro., § 369.)

There is no rule of practice which requires the court on a criminal trial to postpone the swearing of the jury until the panel is completed ; it is within the discretion of the court to determine the practice, and the prisoner's legal rights are not impaired if, after he has been allowed a fair opportunity to interpose a peremptory challenge to a proposed juror, he is not permitted the further exercise of the right by the administration of the oath.

The defendant killed the deceased with a knife ; this was proved by witnesses who saw the occurrence, and the knife was taken from him. A physician called as a witness for the prosecution testified that the wounds were caused by a crescent-shaped knife ; the knife, which had been identified, was then shown witness, and he was asked if the knife shown would produce the wounds he had described. This was objected to as incompetent, irrelevant and immaterial. The objection was overruled. *Held* no error ; also, that as the testimony was merely cumulative on an uncontroverted point, the testimony was harmless.

A medical expert, called as a witness by defendant, was asked and permitted to answer, under objection and exception, the question : " Do you consider Dr. McDonald an authority upon mental diseases ?" This was claimed to be improper, because the prosecution intended to call Dr. McDonald as a witness. That fact was not then made to appear to the trial court, but McDonald was subsequently called. *Held,* that the objection was untenable; that the ruling could not be made erroneous by the subsequent action on the part of the people.

*It seems* that if the subsequent events of the trial rendered the testimony improper, the remedy of the defendant was to move to strike it out and to except to a refusal to do so.

The court was requested but refused to charge : " If some controlling disease was in truth the acting power within him (the prisoner) which he could not resist, or if he had not a sufficient use of his reason to control the passion which prompted the act complained of, he is not responsible." *Held* no error.

(Argued March 25, 1886 ; decided April 13, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made January 11, 1886, which affirmed a judgment of the Court of Oyer and Terminer of the city and county of New York, entered upon a verdict convicting defendant of the crime of murder in the first degree. (Reported below, 38 Hun, 490.)

The material facts are stated in the opinion.

*Adolphus D. Pape* for appellant. The court should have excluded White from the jury as prejudiced against the defense of insanity. (Code of Crim. Pro., § 374, subd. 2; id. 376; *People* v. *Casey,* 96 N. Y. 115 ; *Greenfield* v. *People,* 74 id. 277; *People* v. *Tyrrell,* 21 Weekly Dig. 493.) The prisoner is entitled to have his challenge for cause determined according to law, and to make or withhold his peremptory challenges according to his pleasure. (*People* v. *Bodine,* 1 Denio, 281; *Burt* v. *Panjaud,* 99 U. S. 180; *People* v. *Willett,* 36 Hun, 500.) The jury should be sworn collectively, as a body, at one and the same time. (Code of Crim. Pro., §§ 369, 387; 4 Bl. Com. [Kerr, 4th ed.] 364 ; Code of Crim. Pro., § 372 ; *Hildreth* v. *City of Troy,* 4 N. E. Rep'r, 559 ; *Babcock* v. *People,* 15 Hun, 347, 353.) It was error to allow the deputy coroner

to be asked : In your statement you say that these wounds were caused by a crescent-shaped knife; would a knife, such as I now show you, produce the wounds which you have described? ( *Wilson* v. *People*, 4 Park. Cr. 619.) Facts, not opinions, are what should be furnished to the jury, and they, from that, are to determine the kind of weapon used. (*People* v. *Rector*, 19 Wend. 574.) It was error to allow an expert, who proved the prisoner's insanity, to be asked if he considered Dr. McDonald an authority on mental diseases. (*Adams* v. *Greenwich Ins. Co.*, 70 N. Y. 166 ; 1 Greenl. on Ev. [14th ed.], § 469; *People* v. *White*, 14 Wend. 111.) Purely imaginary or abstract questions, assuming facts or theories for which there is no foundation in the evidence, are not admissible as a matter of right. (*People* v. *Augsbury*, 2 N. Y. Crim. 561.)

*De Lancey Nicoll* for respondent. The evidence justified the verdict, and the proof of deliberation and premeditation was well within the recent adjudications on the subject. (*People* v. *Cornetti*, 92 N. Y. 85 ; *People* v. *Majone*, 91 id. 211 ; *Leighton* v. *People*, 88 id. 117 ; *People* v. *Hovey*, 92 id. 554 ; *Sindram* v. *People*, 88 id. 196 ; *Conroy* v. *People*, 2 N. Y. Crim. Law, 565.) Where the statutes are silent as to the mode of impaneling a jury, after the jurors are returned into the court, all subsequent proceedings in relation to the forma- tion of a jury are left to the discretion of the court. (Thorn. & Mer. on Juries, 288; *People* v. *Damon*, 13 Wend. 351.) When each individual juror is sworn in as soon as he has been accepted by the prosecution and the defendant, and before he takes his seat in the jury box, the right of peremptory challenge exists only from the time the juror appears until he is actually sworn. (*Regina* v. *Sullivan*, 8 Adol. & Ellis, 83 ; *Epps* v. *State*, 19 Ga. 102 ; *McFadden* v. *Comm.*, 23 Penn. St. 17 ; *State* v. *An- derson*, 4 Nev. 265 ; *Rast* v. *State*, 61 Ala. 89 ; *State* v. *Pat- rick*, 3 Jones' L. 443 ; *State* v. *Porter*, 18 Conn. 166 ; *State* v. *Cameron*, 2 Chand. [Wis.] 172.) There is no provision in the Code of Criminal Procedure, directing the court to swear the jurors collectively for the purpose of extending the right of

peremptory challenge or for any purpose. (Code of Crim. Pro., §§ 369, 370, 371, 372, 373, 387.) The challenge for actual bias to the jurors White and Lehmaier, respectively, was properly overruled by the court. (Code of Crim. Pro., §§ 376, 377 ; *Commonwealth* v. *Porter,* 4 Gray, 423 ; *Commonwealth* v. *Boswell,* 16 Pick. 153 ; T. & M. on Juries, art. 2, §§ 193, 196, 197.)

RUGER, Ch. J.  Upon the trial of the defendant for murder in the first degree, the uncontradicted evidence established that on May 26, 1884, he fatally stabbed one Mary Carpenter, his wife, with a knife by repeated stabs upon her neck, body and breast in the presence of a number of people, in the open street, in broad daylight.  He had become embittered against her for several reasons, prominent among which was an effort on her part to procure a decree of divorce, and for which purpose, she had caused papers to be served upon him while he was imprisoned at Sing Sing upon a former conviction for crime.  After this time and while still imprisoned, in speaking of her action in respect thereto, he, on two or three occasions, expressed his intention to kill her.

Upon being released from prison in April, 1884, he attempted to discover her place of residence, and having found it, frequented its vicinity for some weeks previous to the homicide. On the day in question, he waited near the corner of Third avenue and Twenty-sixth street for several hours, armed with a weapon resembling a shoemaker's knife, until his wife, accompanied by an unmarried sister, appeared in the street near him. As they approached, he attacked both ladies with his knife, cutting them and continuing to strike his wife, following her into an adjoining building, where she fled for refuge, until from repeated blows she sank to the ground, and expired.

The only defense attempted on the trial was an effort to establish the insanity of the defendant.  This was the sole issue before the jury, and considerable evidence was taken both for and against the theory of the defense.  No evidence offered by the defendant upon this issue was excluded, and the case was

submitted to the jury under instructions, evincing the tenderest regard for his rights, and no exceptions were taken thereto, save in respect to one unimportant particular.

. The trial judge seems to have conducted the trial with great care, and a determination that no material error should occur in his rulings, which would operate to the defendant's disadvantage.

The jury found the defendant guilty of the crime charged, and the judgment of the court rendered on the verdict has been approved by the General Term, and must be affirmed here unless we find some error committed during the trial, which prejudiced the rights of the defendant.

After a careful examination of the case, we are constrained to say that no such error was committed. The exceptions presented for our consideration relate to three subjects only, viz.: The charge of the court, the admission of alleged incompetent evidence against the prisoner, and errors claimed to have occurred in the course of the selection of the jury. They may all be characterized as of trivial importance.

We will first consider those relating to the formation of the jury. The individuals who were finally selected to hear and determine the case were free from any objections, and were voluntarily accepted by the defendant after ample opportunity afforded him to raise any objection he desired, as to their competency, or to procure their exclusion by way of peremptory challenge. When the panel was completed, the defendant had remaining the right to make fourteen peremptory challenges, and the power of excluding any and all of the persons sitting on the jury if he had desired to do so, and had at the proper time chosen to exercise his right of peremptory challenge. The jury as selected, must therefore, be considered as being free from any reasonable objection which could have been made to them by the defendant, and to have been competent in all respects to hear and determine the case.

It is, however, urged that White and Lehmaier, two of the jurymen called, against whom the defendant exercised the right of peremptory challenge, should have been rejected for cause, and thus have saved to him two of the challenges to which he

was by law entitled.    The fact that the right to make fourteen peremptory challenges was allowed to lapse for want of occasion to use them, demonstrates that the defendant could not have been injured by the decision of the trial court in respect to the jurymen named, however erroneous it might have been. (*People* v. *Casey*, 96 N. Y. 115; *State* v. *Potter*, 18 Conn. 166.)    But we are of the opinion that the incompetency of these men to sit as jurymen was not successfully established by the evidence.    It is unquestionably the right of a person on trial for an alleged crime to have the issue made, tried and determined by a fair, competent and disinterested jury, standing impartially between himself and his accusers.    But this right does not extend so far, as to enable him to exclude from such jury persons holding abstract opinions not affecting their capacity to decide impartially the particular case upon the evidence produced.    The objection in this case was attempted to be shown by examining the jurymen as to the opinions entertained by them upon the subject of insanity as a defense to criminal prosecutions.    White testified, among other things, that "my mind is practically clear and unbiased as between the people and this prisoner."    "I have no opinion now as to the guilt or innocence of the defendant."    "If the defense of insanity was interposed, I would have a prejudice against it."    "My answer only implies that I believe the defense of insanity has been misused and abused, and I am not prejudiced against a person who is insane."    "It is a prejudice against sham defenses."    "I don't think that feeling would control or influence my judgment against the defense of insanity."    Lehmaier testified substantially as follows: "I have no prejudice or bias against the defense, except when misused, and I can't tell until I hear the evidence whether it is misused."    "I would go into the jury box with a bias against that defense."    In answer to the question, "Notwithstanding what you have read, if accepted as a juror, can you so divest your mind of the opinion as to receive the evidence, or consider it without any bias or prejudice against this prisoner?"    He said, "I am sorry to say I think I can, I have an opinion against the misuse of insanity."    Upon

this evidence the trial judge held both of the jurymen compe-
tent, and, we think, correctly so decided. (*Commonwealth* v.
*Buzzell,* 16 Pick. 160 ; *Commonwealth* v. *Porter,* 4 Gray, 423,
424.)   The inquiry here related to the condition of the juror's
mind as affected by the knowledge and information acquired
by him as to criminal trials which had theretofore come within
the range of his observation and experience, and his answer
was, in effect, simply that he thought the defense of insanity
had frequently been used in cases where it had no foundation
in fact.   Can it be reasonably said that this opinion furnishes
any ground for saying that such a person is incompetent to
hear and determine any case where the defense of insanity is
honestly interposed ?   We do not think that the existence of
an abstract opinion on the part of an individual as to the pro-
priety or impropriety of certain defenses in cases theretofore
coming to his knowledge necessarily disqualifies him from sit-
ting as a juror in other cases, even where such defenses are in-
tended to be made.   If the proof had demonstrated that the
proposed juryman did not believe in the existence of a state of
mental derangement, or that such a condition did not consti-
tute a defense to a criminal prosecution, quite a different ques-
tion would have been presented.   But a belief derived from
observation and experience that men have theretofore inter-
posed a defense which did not in fact exist to prosecutions for
crime, does not in itself, furnish any evidence or presumption
that the person holding such a belief has any prejudice or bias
against such a defense when honestly interposed.   As well
might it be said that a person who has sat upon a jury where
fraud, or alibi, or incendiarism was the subject of the issue tried
would thereafter be incompetent to sit on juries where similar
subjects were again to be investigated.   It is impossible for in-
dividuals to divest themselves of the effect, which knowledge,
information and observation impresses upon their minds, and
unless the impression produces such an effect as renders the
individual incapable of acting impartially in determining the
particular issue to be tried, it constitutes no valid objection
to his competency.   The issue in this case was whether the

defendant was sane or insane at the time he committed the homicide; and the fact that the jurymen were of the opinion that other men were not insane at the time of the commission of alleged crimes, did not render them incompetent to pass upon other cases of alleged insanity. Each one of the proposed jurors testified substantially that he could render a just verdict upon the evidence in respect to the defense of insanity without prejudice or bias against the prisoner, and this was all that the most jealous regard for the rights of the prisoner could require, from the jurors selected to determine the truth of the case. To hold such an objection tenable would put it in the power of the criminal to paralyze the administration of justice by asserting the defense of insanity, and thereby excluding from the jury those who believed that such a defense had been theretofore dishonestly interposed as a shield for crime. The result of innumerable trials in the past shows that such a belief is widespread, and seriously entertained by the community at large, and to-adopt such a test for admissibility to the jury box would be to erect an obstacle to the prompt and efficient administration of the law, instead of furnishing a guard for the protection of innocence.

By the express provisions of the Code of Criminal Procedure, unless the evidence shows " the existence of a state of mind on the part of the person in reference *to the case* or *to either party* which satisfies the court, in the exercise of a sound discretion, that such person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and which is known in this Code as actual bias," the person challenged shall be declared competent. (Subd. 2, § 276, Code of Crim. Pro.) So far as the objection in question is concerned the jurymen challenged were wholly free from any knowledge or information as to the condition of the defendant, or the facts of the case, which would produce prejudice or bias against him or his proposed defense. There is no pretense that the men did not believe in the existence of insanity, or the validity of that condition as an exemption from responsibility for crime; but the claim is, that because they believe some per-

sons have falsely used that defense, they are, therefore, incompetent to sit in any case where the defense arises.   It is true that the further objection was made to the juryman Lehmaier that he entèrtained an opinion as to the guilt or innocence of the defendant, derived from what he had heard from the circumstances of the homicide, which ought to disqualify him as a juror.    But we are clearly of the opinion that, under the rule established by the Code of Criminal Procedure (§ 376), the proof did not show any such condition of his mind as disqualified him for this reason from sitting as a juror.

The exception taken to the ruling of the court requiring the defendant to make such peremptory challenges as he desired to each juror as he was called and examined and before he was individually sworn, is pressed upon our attention, and the further exception raising the same question to the rejection by the court of a peremptory challenge to one of the jurors after he had been individually sworn, and the panel had been completed, but before they had been sworn in a body as a completed panel.    The position of the court was deliberately taken at the commencement of the trial, and communicated to the defendant's counsel to the effect that they would be required to make such peremptory challenges as they desired to interpose to each juror after he was called and examined and before he was sworn in as a juror.    Each of the jurors in the panel was called, examined and accepted by both parties before he was sworn in, and the complaint of the defendant is that the right of peremptory challenge, which in some cases he had deliberately withheld until all of the jurors were sworn, was not continued to him after the full panel was secured.    We are not aware of any authority for this position.

The Code of Criminal Procedure provides that "before a juror is called the defendant must be informed by the court or under its direction that if he intend to challenge an individual juror he must do so when the juror appears and before he is sworn." (§ 369.)   It is not claimed that this requirement was omitted.    "A challenge must be taken when the juror appears and before he is sworn, but the court may, in its discretion,

for good cause, set aside a juror at any time before evidence is given in the action." It is not claimed that any case was made calling for the exercise by the court of the discretion thus provided for, and the validity of this exception must depend upon the question as to whether there is any rule of practice which requires the court to postpone the swearing of the jury, until the drawing of the panel is wholly completed. We have been referred to no authority to that effect, and the language of the provision quoted seems to imply that each juror is to be sworn as he is called and accepted by the parties. In *The People* v. *Damon* (13 Wend. 351), Judge SAVAGE in a capital case says : "The regular practice is to challenge jurors as they come to the book to be sworn and before they are sworn, but I apprehend this is matter of practice and may be departed from in the discretion of the court." This is believed to be the general practice in the courts of this State, and such also seems to be the rule in the English courts. (*Reg.* v. *Frost*, 9 Car. & P. 129), and also in the courts of many of the sister States. (*Epps* v. *State*, 19 Ga. 102 ; *McFadden* v. *Comm.*, 23 Penn. St. 12, 17 ; *Rast* v. *State*, 61 Ala. 89 ; *State* v. *Potter*, 18 Conn. 166.)

The statute being silent as to the time when the jury shall be sworn, we think it was within the discretion of the trial court to determine the practice, and that no impairment of the prisoner's legal right is made after he has been allowed a fair opportunity to interpose a peremptory challenge to a proposed juror, that he is foreclosed as to the further exercise of the right, by the administration of the oath to the juror at any time after he has been examined and accepted.

The objection was taken to the question put to a physician, "In your statement you say that these wounds were caused by a crescent-shaped knife ; would a knife such as I now show you produce the wounds which you have described," upon the ground that it was incompetent, irrelevant and immaterial. The objection was overruled and an exception taken. This objection does not raise the question that the evidence was inadmissible because it called for an opinion, but aside from that answer to the exception, we see no error in the ruling. The

knife with which the fatal wounds were proved to have been inflicted was taken at the time of the homicide from the hand of the prisoner and produced and identified on the trial beyond controversy. No dispute arose on the trial as to the character of the weapon used, or but that the identical knife produced, was the instrument with which the defendant committed the crime. The evidence was merely cumulative upon an uncontroverted point and could by no possibility have done harm to the rights of the prisoner. A similar question was held to be proper in *Gardiner* v. *People* (6 Park. Cr. 155, 157). In *Wilson* v. *People* (4 Park. 619), the issue was as to the cause of death, and the objectionable question called for the opinion of the witness as to the kind of instrument used in producing certain wounds. It was held improper. This case is clearly distinguishable from the one under discussion.

The exception taken to the decision of the court in overruling the objection to the question, "Do you consider Dr. McDonald an authority upon mental diseases," put to an expert produced by the defendant upon cross-examination by the people, is claimed to have been well taken. It is said to have been improper, because the prosecution intended to call Dr. McDonald as one of the people's witnesses on the trial. That fact certainly did not appear to the trial court when it passed upon the objection, and we do not see how that ruling could be made erroneous by the subsequent action of the people in calling the person named as a witness. The question when asked was quite immaterial, and no error was then committed by the court in allowing it to be answered. If the subsequent events of the trial rendered it improper, the remedy of the party objecting was to move to strike out the objectionable evidence and except to a refusal to do so.

Other objections were made to questions put by the people to defendant's witnesses by way of cross-examination, but we think there were none that were important or exceeded the latitude which the court were authorized to allow by way of cross-examination.

The only exception remaining which is deemed of sufficient importance to merit particular notice is that taken to the refusal of the court to charge according to the request of the prisoner's counsel, " If some controlling disease was in truth the acting power within him (the prisoner) which he could not resist, or if he had not a sufficient use of his reason to control the passion which prompted the act complained of, he is not responsible." The principle of this request is not only impliedly condemned by sections 21 and 23 of the Penal Code, but has been held to be untenable by the express decision of this court. (*Flanagan* v. *People*, 52 N. Y. 467.)

Judge ANDREWS there says: " Indulgence in evil passions weakens the restraining power of the will and conscience, and the rule suggested would be the cover for the commission of crime and its justification. The doctrine that a criminal act may be excused upon the motion of an irresistible impulse to commit it, when the offender has the ability to discover his legal and moral duty in respect to it, has no place in the law."

The learned trial judge had laid down the rule governing the jury in considering such a defense in the language of the statute, which furnishes a simple, clear and intelligible guide for their deliberations, and from a careful and painstaking examination of the evidence in the case, we see no reason to suppose that they have been mistaken as to its character and effect, or the legal principles applicable thereto.

It seems quite impossible to resist the conclusion that the crime was committed by the defendant with deliberation and premeditation, and with a full consciousness of the wicked and unlawful character of the act he proposed to do, and that the jury were justified in rendering a verdict of guilty against him.

The judgment should be affirmed.

All concur.

Judgment affirmed.