## PEOPLE v. McQUADE.

(*Supreme Court, General Term, First Department.* May 18, 1888.)

1. JURY — COMPETENCY — OPINIONS FORMED BY NEWSPAPER REPORTS OF EVIDENCE — WAIVER OF OBJECTIONS.

    Where two jurors, in a criminal case, have read in the papers reports of the evidence given in a former trial of the case, and formed opinions thereon, they are not qualified to act, though they declare that they can fairly and impartially try defendant; but when defendant has four peremptory challenges left when the jury is sworn, and does not avail himself of them, the error in not excluding them is cured.[1]

2. SAME—COMPETENCY—DISCRETION OF TRIAL COURT.

    The trial court has power to determine whether a juror is qualified as required by law; and, when the exercise of that power is complained of, it must clearly appear that error was committed to warrant the court in reversing a criminal case.[1]

3. CRIMINAL LAW—INSTRUCTIONS—ABSENCE OF ALLEGED PARTICIPANTS IN THE CRIME.

    In a trial of an alderman for accepting a bribe, a request to charge that the jury have no right to consider the fact that certain of the aldermen alleged to have been in the supposed corrupt combination are now out of the jurisdiction of the court; that such fact, if true, has no bearing on the guilt or innocence of defendant, and must be disregarded,—was properly refused, as the jury had a right to regard it as explaining why these aldermen were not called as witnesses by the state.

4. SAME—INSTRUCTIONS—REFUSAL TO CHARGE—NEGATIVE PROPOSITION.

    In a trial for receiving a bribe, where the court has charged that, if certain witnesses were believed and were corroborated, the evidence would warrant a conviction, it is not error to refuse to charge the negative of the same proposition.

5. SAME—INSTRUCTIONS—CHARACTER OF ACCUSED.

    In a trial for accepting a bribe, the court properly refused to charge that, if the evidence relied on to convict is of doubtful credibility, the previous good character of defendant may of itself be sufficient to create a reasonable doubt of his guilt, and entitle him to an acquittal, where the court has charged that it is conceded that defendant has heretofore borne a good character; that, while evidence of good character does not tend to prove that a man is not guilty of an offense, it must be given all the weight the jury think it entitled to; that in a case where there is no evidence of good character, where the jury may be satisfied of defendant's guilt, evidence of good character, if introduced, may raise that presumption of a reasonable doubt to the benefit of which defendant is entitled; that, in weighing such evidence, the jury should remember that all men have at some time been of good character; and that men of previous good character have been known to commit grave crimes.

6. SAME—EVIDENCE—ABSENCE OF ALLEGED ACCOMPLICES.

    On a trial for accepting a bribe, evidence was admitted, over defendant's general objection, to show that certain persons implicated with him had left the state. The evidence was admissible only for the purpose of explaining why the state did not call them as witnesses; but, as it was not limited in its effect by the court, it appeared that it was for the purpose of corroborating other witnesses. The court subsequently ruled it out, and refused to allow the prosecution to comment on it. *Held*, that the error in admitting it was cured.

Appeal from court of general sessions, New York county.

Arthur J. McQuade was indicted for accepting a bribe. On trial at the general sessions, he was convicted, and from judgment there rendered he appealed.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*R. S. Newcombe*, for appellant. *McKenzie Semple*, for the People.

BRADY, J. The defendant was placed upon trial the second time; the jury first impaneled having disagreed. The charge against him and others had

---

[1] On the general subject of the competency of a juror in a criminal case, see Hall v. Com., (Pa.) 12 Atl. Rep. 163, and note.

created great attention, and the publications in regard to it were numerous, including the evidence, or portions of it. Many jurors were examined before those herein were declared to be competent, and some exceptions were taken to the rulings of the learned recorder made in regard to several of the jurors rejected, as well as those accepted. Two of the latter, Ottenburg and Davis, had formed opinions prior to the trial, and had read the published evidence, especially Davis, who read it with particularity; and the condition of mind of each rendered them clearly incompetent, under the decision in *Greenfield* v. *People*, 74 N. Y. 277, notwithstanding their declaration that they could fairly try the defendant, and, despite of the opinion, render a fair and impartial verdict upon the evidence. The distinction made by the court of last resort between opinions based upon statements made under oath, and spread before the persons affected in the shape of testimony, and those resting upon the unsolemnized, unverified talk of people, is clear and just. The court said: "We are of the mind that one who has formed an opinion from the reading of a report, partial or complete, of the criminatory testimony against a prisoner on a former trial, however strong his belief and purpose that he will decide the case on the evidence to be adduced before him as a juror, and will give an impartial verdict thereon, unbiased and uninfluenced by that impression, cannot be readily received as a juror indifferent towards the prisoner and wholly uncommitted." The proof of bias in that case was not stronger than that herein affecting the competency of the jurors named; and, applying the just doctrine of the case cited, which was quoted with approval in *Balbo* v. *People*, 80 N. Y. 491, those jurors should have been rejected. The error, however, is not fatal, for the reason that the defendant had, when the jury were about to be sworn, four peremptory challenges, and he could have protected himself, by the use of two of them, from the apprehended injustice of the acceptance of the objectionable jurors. Such is the rule established by the case of *People* v. *Casey*, 96 N. Y. 115, and *People* v. *Carpenter*, 102 N. Y. 238, 6 N. E. Rep. 584. It became the duty of the defendant, in other words, to shield himself from injury by challenging the jurors named, peremptorily.

The other exceptions, springing from this branch of the trial, are not deemed of sufficient importance to require particular consideration. It may be said, nevertheless, in passing, that the court is undoubtedly invested with the power of determining whether a juror possesses the qualifications demanded by section 1079 of the Code of Civil Procedure; and, when that jurisdiction is employed and is complained of, it must clearly appear that an error was committed in rejecting the juror. The subject necessarily involves a large degree of discretion, and it would be difficult, if not impossible, to put upon the record such a portraiture of the rejected juror, and his mental fitness, as that presented to the trial justice.

Many exceptions were taken during the trial, and numerous are those relating to the charge of the learned recorder, and to the refusals to charge as requested. The conviction of the defendant depended upon the evidence of the witnesses Duffy and Fullgraff, and their corroboration. They were accomplices, and had confessedly committed willful and deliberate perjury. The defendant's counsel were clearly alive to this feature of the prosecution, and with great ingenuity, zeal, and ability sought to shield their client from the wrong which they feared might be accomplished through this testimony. Every available principle of evidence affecting such persons prejudicially was invoked in all the modes which devoted skill and research could suggest; and, indeed, this may be said of all the *quasi* objectionable features of the prosecution, viewed from their stand-point. People gave evidence of the absence of several of the persons implicated in the offense charged against the defendant,—persons who had acted in concert with him to accomplish the object in view, and who were absent from the state. The objection to this evidence was general, and without specification of particular grounds, and such objec-

tion was overruled. The admission of this evidence was proper, for the purpose of showing why the people could not call these persons as witnesses; and, if the attention of the court had then been asked to so limit the evidence, it is more than probable, from what subsequently occurred, that this motion would have been granted; and it could not then have been said that it stood upon the record admitted generally in the case, and for the purpose of corroborating the statements of Duffy and Fullgraff in reference to the illegal combination in which the defendant was implicated. This feature of the case was nevertheless changed by the direction of the learned recorder that the counsel for the prosecution should not, in his address to the jury, comment upon the evidence; and it arose in this way, as it appeared on the record: "Gen. Tracy then summed up the case to the jury on behalf of the defendant, and Col. Fellows on behalf of the people, and in the course of his remarks to the jury said: ' There is another circumstance which corroborates this testimony, and that is the absence of a number of persons implicated by the story. When did they flee? Where did they go?' *Mr. Tracy.* We object to that; we object to the counsel commenting upon the absence of other parties. *The Court.* Leave that out. *Col. Fellows.* Your honor, it is proved— *The Court.* I know that. *Gen. Tracy.* I object to— *The Court.* It is objected to by the defendant, and I will rule it out. *Col. Fellows.* I agree with the ruling of the court. What has been proved by that? That, if these men were away, they went away long before Fullgraff and Duffy told that story. That much, at least, is in evidence here. *Mr. Tracy.* I except to that. *The Court.* I don't know that you can except to anything that I did not rule upon. I don't know that there is any rule of law by which you can do it. *Col. Fellows.* I will leave that here. The court thinks that it had better not be commented upon, and it is in evidence for what it is worth." It was consequently ruled out of the case, and formed no longer any part of the evidence to be considered by the jury. Even less than what was declared in this manner by the recorder was held to strike out certain evidence to which objection had been made, in the case of *Wooley* v. *Railroad Co.*, 83 N. Y. 121–130. What the district attorney said in the remarks afterwards made by him did not affect or change the decision of the recorder, for the latter in no way modified the ruling which he had made excluding the evidence from the consideration of the jury; and, as no further comment was made upon the evidence, the jury must have understood from what had transpired that this evidence was no longer before them.

This incident was not, however, the only one connected with the subject, for the defendant requested the learned recorder to charge: "*Fifty-Third.* That upon this trial the jury had no right to consider the fact that certain of the aldermen alleged to have been in the supposed corrupt combination are now out of the jurisdiction of this court; that such fact, if true, has no bearing upon the guilt or innocence of this defendant, and must be entirely disregarded by the jury." This was refused, and exception was duly taken. The request, even if the evidence in question had been before the jury, is too broad, and for that reason must fail. The proposition that the jury had no right to consider the fact that these aldermen were out of the jurisdiction of the court was decidedly incorrect. They had the right to consider it for the purpose expressed, but no other, and therefore that part of the request was bad in form and substance. The subsequent part of it is equally faulty; for, while it correctly states that the evidence mentioned has no bearing upon the guilt or innocence of the defendant, it requires the statement to be made to the jury that it must be entirely disregarded. If the words "and they must be entirely disregarded by the jury" had been omitted, the request would have been less liable to the criticism now made upon it, although it would still be subject to the censure that it contains, *in limine,* an erroneous legal proposition. The defendant doubtless wished the court to say to the jury what

should have been said to them, namely, that the absence of the aldermen referred to had no bearing upon the guilt or innocence of the defendant; but the request involved more than this, and fails by force of its own weight. It is well settled that a request must be so framed as to contain no faults or erroneous doctrine. It is not the duty of the courts to dissect requests, and so conform them as to make them unobjectionable. If they essayed to do this, it would doubtless meet objections just as formidable as those which are presented under the prevailing system. It is equally true that the value of a request should not be destroyed by hypercritical analysis; and should be preserved in all its vigor, when it can be without impugning upon well-settled rules which are the outcome of deliberation, learning, and experience. Although it is not intended to assert that the learned counsel for the defendant designed to do so in this case, it sometimes happens that a request is made obscure or involved in the hope that something may spring from it in the future which will be serviceable, if its main features fail to accomplish the desired result,—a result, it must be apparent, which will be modeled according to the impression made upon the minds called upon to review the ruling with regard to it, and to declare its legitimate purpose and effect.

The learned recorder was also requested to charge that, if the jury did not believe the evidence of Duffy and Fullgraff, they must acquit. This is, however, the negative only of what had been already charged, namely, that, if these witnesses were believed and were corroborated, the evidence would be sufficient to warrant a conviction. It was patent to all that the verdict of guilty, if pronounced, must rest upon the truthfulness of the stories told by these witnesses. It was not contended or assumed by counsel or court that the defendant could be convicted, striking their testimony from the case, or discarding or discrediting it. Their evidence alone presented the starting point in the alleged corrupt agreement, around which the other facts and circumstances clustered, and gave it confirmatory strength, if believed to be true. Indeed, it may be said that when full scope and full credence was given it, and it was corroborated, a conviction might follow as its ultimate, inevitable result, unless some substantive and independent defense were shown; while the opposite conclusion must ensue if it were not thus treated and cherished. The charge on that question fully presented that view, and the jury could not have misunderstood it. It may be said that the negative proposition should have been charged in order to limit the investigation by the jury to the well-defined and certain limits of the other evidence, but this, though it would have been eminently proper, was not absolutely essential either to the full discharge of judicial duty, or for the protection of the defendant's rights. We must assume that juries possess some intelligence. Personally, I have great confidence in that tribunal, and, when told that an affirmative result depends upon their belief of witnesses named, cannot fail to understand that disbelief must work out the converse and negative conclusion. The substance of the request was put in another form, as follows: "*Seventeenth.* That if the jury, upon a full consideration of the whole case, do not believe that the witnesses Fullgraff and Duffy are worthy of credit, it is their duty to reject their evidence, and acquit the defendant." *The Court.* "I refuse to charge other than I have charged; but the same observations apply to it as to the other request."

The learned recorder was also requested to charge as follows, and declined to do so except as charged: "*Twenty-First.* That if the jury believe that the evidence introduced by the prosecution, and relied upon to convict, is of doubtful credibility, the previous good character of the defendant, clearly established by uncontradicted evidence, may in itself be sufficient to create a reasonable doubt of the defendant's guilt, entitling him to an acquittal." *The Court.* "I refuse, except as I have charged." What he said to the jury on the subject of good character was: "The defendant has introduced evi-

dence of, and it is conceded in this case by the people, that he is a man who has heretofore borne a good character. In all criminal cases, evidence of good character is to be considered and weighed, and given its proper effect by a jury. While evidence of good character, of itself, does not tend to prove that a man is not guilty of an offense, it is to be taken into consideration, and given all the weight which a jury believe it is justly and properly entitled to; and in a case where evidence of good character has not been introduced, and where a jury may be satisfied of the guilt of the person charged, evidence of good character, if introduced, will, of itself, sometimes raise that presumption of reasonable doubt,—will raise that reasonable doubt to the benefit of which the defendant is entitled. But, in weighing evidence of good character, a jury should be careful to remember that all men, at some time in their lives, have been men of good character; and that men of previous good character have been known to commit some of the gravest crimes known to the law. However, the law, in its humanity, says that that evidence is to be received and considered by the jury, and given all the weight that they think it justly and properly entitled to, and no more." It cannot be said that the remarks of the learned recorder embraced the exact proposition contained in the request; but they did nevertheless present all the favorable elements created by proof of good character. He said that, "in all criminal cases, evidence of good character was to be considered and weighed and given its proper effect by a jury;" and continued, saying that "such evidence would of itself sometimes raise a presumption of reasonable doubt, even when the jury were satisfied of the guilt of the person charged." He concluded by saying, further, as we have seen, that "the law, in its humanity, says that the evidence is to be received and considered by the jury, and given all the weight that they think it justly and properly entitled to, and no more." The other observations, though correct in substance, might have been omitted from the charge. They are not exceptionable, however, inasmuch as the effect of proof of good character was distinctly left to the jury, and the statement of the learned recorder as to forfeiture of character by crime embraced nothing more than is present to the human mind as the result of observation and experience. There is necessarily an end to good character when the person who bears it commits a crime, but good reputation is inconsistent with the probability of transgression, and hence it may be invoked to overcome facts and circumstances suggestive of guilt. This proposition was stated to the jury, as we have seen, when the learned recorder said, "proof of good character might create a doubt even where the jury were satisfied of the guilt of the person accused." The objection to what was said, seems to concentrate in the form in which it was expressed, and not in the substance. Good character always is the ally of the accused, protecting him when endangered by well-founded suspicions,—indeed, it may be the only defense which he can successfully interpose against accusation; and it should not be lightly treated, but given its full effect, and without comment either designed or calculated to weaken its force. The rule which made it important and valuable was formulated by judges of experience and observation, who well knew that good character prevailed until crime was committed, and that grave crimes were perpetrated by men of previous stalwart reputations, and it has become a maxim almost sacred in the law. If the full measure of its benefit be not given by proper expression to the jury, the accused is wronged, and should have redress, particularly where the proof against him is of perjured witnesses,—perjured on their own confessions. These observations are indulged in, lest it should be thought the importance of good character as a factor in the defense was not appreciated.

It remains only to say, with reference to them, that, though there are numerous exceptions in the case, these especially considered are the only ones regarded as at all formidable. Several of them, urged with hope of success,

have been disposed of adversely to the defendant by the decision in *People* v. *O'Neil*, (5.Crim. Rep. 302) in this court, and which has recently been affirmed in the court of appeals, (16 N. E. Rep. 68.) Indeed, it may be said that all the vexed questions, and all questions of real import, arising out of prosecutions kindred to this, more particularly those relating to corroboration and the value and admissibility of the evidence of accomplices and perjurers, have been substantially disposed of by the case mentioned, and that of *People* v. *Jaehne*, 103 N. Y. 182, 8 N. E. Rep. 374, and *People* v. *Sharp*, 107 N. Y. 427, 14 N. E. Rep. 319, S. C. in this court, 45 Hun, 460, and remove all doubt on these subjects.

It must also be borne in mind that, under the provisions of Code Crim. Proc. § 542, after hearing an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. Now, an error not of substance, and which gives rise only to technical, and therefore harmless, objections, must be disregarded. The effect of the section is to dissipate rules of review which formerly prevailed, and which sometimes led to new trials, even when the error was technical. These are no longer useful. The merit of exceptions, in the spirit of the Code, must be proclaimed and adhered to, (*People* v. *Sharp*, 45 Hun, *supra*,) and they are available only where they affect the substantial rights of the party, (*People* v. *Dimick*, 107 N. Y. 9, 34, 35, 14 N. E. Rep. 178.) The examination of this appeal has not revealed the presence of such exceptions, or disclosed any ground requiring us to grant a new trial, in view of the rules established by the provisions of the Code, *supra*, and the cases cited. The judgment appealed from must therefore be affirmed. Ordered accordingly.

VAN BRUNT, P. J., and DANIELS, J., concur.