# Court of Appeals.

October 23, 1894.

## PEOPLE v. HENRY MILES.

(62 St. Rep. 346; 143 N. Y. 385.)

1. TRIAL—JURY—CHALLENGES—CRIMINAL CASES.

Where the prisoner's counsel is, in no case and in no manner, com-
pelled to challenge until after the prosecution has fully exhausted
its right, there is a full compliance with the provision of sections
385, 386 of the Criminal Code.

2. EVIDENCE—HOMICIDE—INSANITY.

Where one of the defenses interposed to an indictment for mur-
der was insanity, it is not error to permit the prosecution, after
evidence has been given on the part of the defense as to words and
actions of defendant on an occasion specified which, it was claimed,
indicated insanity, to show that on that occasion defendant was in-
toxicated.

3. HOMICIDE—COMMISSION OF FELONY.

The word "otherwise," in section 183 of the Code, is not confined
to felonies against property simply, but also includes a felony
against a person other than the one killed.

Appeal from judgment of the court of oyer and terminer of
Jefferson county, entered upon a verdict, which convicted the
defendant of the crime of murder in the first degree, and also
from an order of said court denying a motion by defendant for a
new trial.

Wilbur F. Porter, for appellant.

Virgil K. Kellogg, for respondent.

FINCH, J.—The defendant has been convicted of murder in the first degree and sentenced to death. His counsel assails that judgment for alleged errors occurring at the trial, and also insists that upon the merits the conviction should only have been for murder in the second degree.

In advance of the selection of a jury and before any of the panel had been examined, the mode and order of that selection came up for discussion. The court allowed the parties to choose whether all peremptory challenges should be reserved until twelve jurors had been provisionally selected, or whether the case of each juror had been fully settled before leaving the witness stand, and if accepted the final oath be at once administered. The parties chose the latter method and the court assented.

Thereupon Walter B. Canter was called and sworn as to his qualification of a juror. He was examined by the prosecution and at the close of that examination the prisoner's counsel asked if the juror was satisfactory to the people, to which the district attorney replied, "we do not challenge him for bias nor for favor." The defense insisted that the prosecution should at once accept or reject the juror and exercise its right of peremptory challenge immediately if it meant to do so at all; and to the juror was then examined in behalf of the prisoner, and both examinations having been concluded, and the basis obtained for determining whether challenges should be interposed or not, the court called upon the district attorney for the exercise of his right. There was no challenge for general disqualification, nor for implied bias, nor for actual bias, and then the district attorney was called upon to exercise his right of peremptory challenge. He interposed none, and, after a few further questions, the prisoner's counsel announced himself satisfied and the juror was sworn. In this process there was full obedience to and no disregard of the provision of the Criminal Code that chalenges to an individual juror must be first taken by the People and then by the defendant. § 385. The next section, fixing the order of the different challenges, indicates that they might have been disposed of in that order. Practically that result was accomplished, but at all events the prisoner's

counsel was in no case and in no manner compelled to chal-
lenge until after the prosecution had fully exhausted its right.

One of the defenses interposed on the trial was that of insan-
ity. To sustain it proof was given of the conduct of the defend-
ant at Evans' Mills on an occasion when he was trying to settle
his business difficulties with Mrs. Ward, and it was claimed on
his behalf that his words and actions on that occasion were so
strange and inexplicable as to indicate insanity. To rebut that
inference and answer the manifest tendency and purpose of the
proof, the prosecution were allowed to show that on that day
and that occasion the defendant was intoxicated, and that his
excited and ugly conduct was explainable by that fact. The
evidence was clearly admissible.

On the day of the homicide the witness Carpenter was one of
the first persons who came upon the scene, and described in
very considerable detail what the prisoner said, what his ap-
pearance was and the manner of his conduct. The following
question was then propounded by the defendant's counsel:
"After you were over there at the house with him, before
leaving for Evans' Mills, how did his acts and conversation,
which you have here related upon the stand, impress you at the
time as to being rational or irrational?" To this inquiry the
prosecution objected that it aggregated a whole series of acts
and words and called for an opinion upon that aggregation,
leaving it impossible to determine upon what specific acts or
words the impression of the witness was founded. The court
took that view of the question and at first excluded it, but there-
after changed its ruling and explicitly allowed the question
read from the stenographer's minutes to be put to the witness
and answered by him. Thenceforward similar questions were
asked by the defendant's counsel of other witnesses, and I have
discovered no instance in which they were excluded.

The remaining objections respected the charge of the court.

The trial judge defined murder in the first degree, using for
that purpose the words of the statute. In so far as that defini-
tion involved homicide while engaged in the commission of a
felony the prisoner's counsel insisted that it had no application
to the facts disclosed. The defendant, as a witness, testified
that the fatal shot was fired not at Mrs. Ward, and not even at

Rusaw, but in the latter's direction, without intention to kill or even to wound him, but solely to frighten him and so drive him away from the premises. The truth of that testimony was submitted to the jury, the court saying that upon that theory the woman was shot accidentally and the prisoner was not guilty. The jury disbelieved the pretended accident and rejected the explanation, and that they were fully justified in that conclusion is apparent from two facts. If the killing of Mrs. Ward had been accidental the prisoner would have said so at the time; it would have been the first word to spring to his lips; the natural and swift explanation made to those who came upon the scene. But no such word was then uttered. His first word to Carpenter was, "What are you going to do with me?" and then he said: "I have shot that woman." He proposed to carry the dead body into the house, and when Carpenter doubted their right to do so, he insisted and said: "They will electricity me." This was the evidence of Mrs. Carpenter, who did not go into the house when they carried the body in; but she adds that when they came out the defendant, in answer to her remark, "You hadn't ought to done that," replied, "I don't think I had ought to, but she would have other men around her, and she slept with that hired man all night," and further added, "She has got my property all away from me." The defense called Mr. Carpenter, who not only corroborated his wife, but repeated what occurred in the house when the body was laid upon the bed. The prisoner bent over her and kissed her, and said: "Mary, I have shot you—I have killed you—my God, Mary, I have killed you — but I couldn't help it — I done it because I loved you — you have lied to me — you have proved false to me and I couldn't stand it." All these expressions indicating an intentional killing, and the motive for it are utterly inconsistent with any theory of accident, which was evidently an afterthought. Beyond that the two lines of fire, towards Mrs. Ward in one direction and toward Rusaw in another, were shown to be seventeen feet apart, and made the theory of an accident quite improbable.

But assuming that Miles did shoot at Rusaw intending to wound or kill him, and by a false aim killed Mrs. Ward, the defendant's counsel contended that the court erred in describing

it as murder in the first degree, and that a felony affecting another than the person killed will not be sufficient to make the homicide murder in the first degree. The words of the statute are "by a person engaged in the commission of or in an attempt to commit a felony either upon or affecting the person killed or otherwise." Penal Code, § 183. The construction asserted is that the word "otherwise" relates only to felonies against property and does not include a felony upon or against a person other than the one killed. The supposed authority for this construction is People v. Greenwall, 115 N. Y. 520; 26 St. Rep. 226, but it decides no such proposition. In saying that the word "otherwise" cannot be changed into "another" it means only that it cannot be so narrowed and limited and that it includes a felony against property as well as against another. There was no error in the charge in this respect.

That charge was not unfair or an invasion of the province of the jury. The evidence could not be re-called and put before them in its logical order without seeming to bear heavily upon the prisoner, but they were left to find the facts and steadily instructed that no opinion of the court was intended to be expressed, or should at all influence their conclusion.. No opinion was expressed upon any fact in dispute, but the testimony given was recalled so far as was need to make plain the legal rules which it was the duty of the court to state and to explain. There was in truth no defense available to the prisoner. The proof of insanity fell far short of the legal standard, and the examination of the prisoner himself showed that he fully understood at the time the nature and quality of his act.

We see no reason for a reversal of the verdict.

The judgment should be affirmed.

All concur.

Judgment affirmed.