OPINION OF THE COURT
Levine, J.
Defendants in these cases raise a common issue regarding the proper construction of CPL 270.15, the statutory provision governing jury selection: whether that section mandates that the People make all their peremptory challenges to a particular array before the defendant is required to make any, or if it permits the court to require both parties to exercise peremptory challenges to a subset of jurors or sequentially to individual jurors in a particular array.
In People v Alston, the court and the parties questioned the group of prospective jurors seated in the jury box at the beginning of each round of jury selection. Thereafter, challenges for cause were made, first by the People, then the defense. The parties then executed their peremptory challenges. In the first two rounds, the prosecution exercised peremptory challenges with respect to the entire group of prospective jurors seated in the jury box. The defense followed, also exercising all its peremptory challenges to the entire panel sitting in the box. After two rounds, seven jurors had been accepted by both sides, sworn as trial jurors, and removed from the box. Fourteen prospective jurors were then seated in the jury box, questioned, and subjected to challenges for cause. The court then asked the parties — first the People and then the defense — to exercise peremptory challenges to the first five prospective jurors in the *523 box (five jurors were needed to complete the jury). Defendant objected, arguing that the People must challenge the entire panel seated in the box, not part of the panel. The objection was noted, but the voir dire proceeded as directed by the Trial Judge, with the number of jurors the parties were permitted to peremptorily challenge being determined by the number of jurors needed to complete a full 12-person jury. In that fashion a jury was ultimately formed, and that jury convicted defendant after a trial of robbery and weapons possession.
A different method of jury selection was used in People v Morris. In defendant Morris’ case, a group of prospective jurors was seated in the jury box and questioned by the court and the parties. The court then entertained challenges for cause by both sides. Next, the court instructed the attorneys that they were to use their peremptory challenges as to each juror "one at a time,” the People first, then the defendant. Defense counsel objected, urging that CPL 270.15 (2) required that the prosecution exercise all peremptory challenges as to the jurors in the jury box before the defense was required to exercise any peremptory challenges. The court disagreed with defendant, and voir dire proceeded with the prosecution, then the defense, making peremptory challenges sequentially as to each individual juror. At the end of each round, those jurors who had not been excused were sworn as trial jurors. The sworn trial jurors were then removed from the box, and 14 more were brought in. Two more rounds were conducted in the same manner until a jury of 12 had been selected and sworn. At the conclusion of the trial, defendant was convicted of attempted robbery and menacing.
On appeal both defendants argue that CPL 270.15 requires the People to exercise all peremptory challenges to a particular array of jurors before the defendant maybe required to exercise any peremptory challenges to that array. Under their construction, the section confers on defendants a substantial right — a tactical advantage in conserving the limited number of peremptory challenges to select the most favorable prospective jurors, because the defense will know which jurors of the entire panel will be struck by the prosecution before having to exercise any of its challenges. Defendants contend that the refusals of the trial courts to adopt their interpretation of the statute deprived them of that substantial right and thus, they are entitled to a new trial. The Appellate Division rejected defendants’ arguments, as do we.
The process by which juries are seated, examined, excused for cause and by peremptory challenge, and sworn as trial *524 jurors is prescribed by CPL 270.15. First, the jurors are called into the jury box in groups of "not less than twelve” (CPL 270.15 [1] [a]), and together sworn to answer questions truthfully. The court then "initiate[s] the examination of prospective jurors” as to preliminary matters "aifecting their qualifications to serve as jurors in the action” (CPL 270.15 [1] [b]). Thereafter, the court must permit both parties to question the jurors "individually or collectively regarding their qualifications to serve as jurors” (CPL 270.15 [1] [c]). After questioning is completed, each party
"commencing with the people, may challenge a prospective juror for cause * * *. After both parties have had an opportunity to challenge for cause, the court must permit them to peremptorily challenge any remaining prospective juror * * * and such juror must be excluded from service. The people must exercise their peremptory challenges first and may not, after the defendant has exercised his peremptory challenges, make such a challenge to any remaining prospective juror who is then in the jury box. * * * The prospective jurors who are not excluded from service must retain their place in the jury box and must be immediately sworn as trial jurors.” (CPL 270.15 [2] [emphasis supplied].)
Having sworn any jurors selected in the first round, the court may then either "direct that the persons excluded be replaced in the jury box by an equal number from the panel or, in its discretion, direct that all sworn jurors be removed from the jury box and that the jury box be occupied by such additional number of persons from the panel as the court shall direct” (CPL 270.15[3] [emphasis supplied]).
To resolve the question presented in People v Alston, whether the trial court may require the prosecution and then the defense to exercise peremptory challenges to only the number of jurors needed to make a group of 12 even if more are sitting in the box, we turn first to subdivision (3) of CPL 270.15, which defines how jury selection takes place after the first round. This subdivision expressly permits the trial court in its discretion: (1) to keep sworn jurors in the box at the end of a round and to fill the remaining seats with the number of prospective jurors excused in the previous round; or (2) to remove sworn jurors and fill the box with any number of jurors that it chooses. When a court opts for the first method, the number of *525 prospective jurors placed in the jury box but not sworn, i.e., the number of jurors in the box who are subject to peremptory challenges (People v Harris, 57 NY2d 335, 349 [once a juror is sworn, that juror cannot be challenged peremptorily]), may equal the number of jurors needed to complete the jury. Likewise, under the second method, a trial court has the discretion to seat any number of prospective jurors in the box, and thus can limit the number of jurors against whom the prosecution is required to make its peremptory challenges in a given round to the exact number needed to complete the jury. Thus, whether or not sworn jurors are removed from the box, a trial court can use statutorily permissible means under CPL 270.15 (3) to limit the number of jurors challenged at one time to the number of jurors needed to complete a jury.
Defendant Alston argues, however, that once a court seats more than the number of jurors necessary to fill out a trial jury, it must require the prosecution to exercise all its peremptory challenges to the entire group seated in the box because CPL 270.15 (2) controls the order in which peremptory challenges are to be made in all rounds, and in his view, the language of subdivision (2) strictly prohibits the prosecution from making peremptory challenges as to any juror seated in the box after the defendant has exercised any peremptory challenge. Specifically, he points as controlling here to the use of the plural "challenges” in the clause "[t]he people must exercise their peremptory challenges first,” together with the limitation that after the defense has made its "peremptory challenges” the People may not challenge "any remaining prospective juror who is then in the jury box.” Thus, he argues, in his case — in which the trial court filled the box with more than the number of jurors necessary to complete a jury of 12 — it was error to allow the prosecution to make peremptory challenges to groups of potential jurors in the box rather than requiring that challenges be made to all those potential jurors in the box at one time, because the procedure used allowed the prosecution to challenge jurors who were in the box but not a part of the first group challenged after the defense exercised its challenges.
Defendant Alston’s argument finds no support in the history to subdivision (3). At its inception, subdivision (3) allowed the court to remove sworn jurors from the box only with the consent of the parties. It was amended in 1985 to allow the court in its discretion to empty the jury box of sworn jurors and fill it with more than the number of prospective jurors *526 needed without the consent of the parties (L 1985, ch 516, § 1). The singular purpose of the legislation was to speed up the jury selection process by eliminating repetitious preliminary questions (see, Bill Jacket, 1985, ch 516, Mem of Senator Stafford [Sponsor’s Mem]; Mem of J. Marc Hannibal, Div of Parole; Mem of Linda J. Valenti, Div of Probation & Correctional Alternatives; Mem of Jay Cohen, Div of Criminal Justice Servs; Mem of William Pelgrin, State Commn of Correction; Mem of Donald E. Urell, Div for Youth). There is no indication in the statutory history that this amendment would confer upon a criminal defendant the tactical advantage that would arise from knowing all of the prosecution’s peremptory strikes to the whole array of prospective jurors in the box before the defendant was required to make any.
Similarly, the express language of CPL 270.15 (2) is ambiguous and thus does not have the dispositive effect that defendant Alston and the dissent attribute to it. CPL 270.15 (2) says that "[t]he people must exercise their peremptory challenges first and may not, after the defendant has exercised his peremptory challenges, make such a challenge to any remaining prospective juror who is then in the jury box” (CPL 270.15 [2]). The word "challenges,” from which defendant infers a legislative intent to require collective — not individual — challenges, does not sustain the meaning given it by defendant. The sentence in the statute preceding the one using the plural "challenges” refers to an individual challenge of a single juror, i.e., "[t]he court must then permit [the parties] to peremptorily challenge any remaining prospective juror” (id. [emphasis supplied]), and a statutory rule of construction requires that "[w]ords in the singular number include the plural, and in the plural number include the singular” (General Construction Law § 35). Thus, "challenges” as used here in the phrase "the people must exercise their peremptory challenges first” can easily be read to mean that each of the multiple peremptory "challenges” of the prosecution must come before each of the challenges of the defense.
Moreover, the phrase "the people * * * may not, after the defendant has exercised his peremptory challenges, make such a challenge to any remaining prospective juror who is then in the jury box” may be read — as defendant urges — to require the People to make all their peremptory challenges to all the jurors in the box before the defendant makes any in all rounds. It can, however, also be read — as the People urge — to preclude the prosecution from challenging any juror remaining in the *527 jury box after both sides have had an opportunity to strike the juror and failed to do so.
Defendant’s interpretation of the statute would arbitrarily vest defendants at whose trials the Judges take advantage of what was intended merely as a time saving device — removing sworn jurors and seating more than are needed to complete a trial jury — with a strategic advantage unavailable to other defendants when the court declines to remove sworn jurors or removes them but decides not to fill the entire box. Statutes, should be construed to avoid creating such arbitrary application (McKinney’s Cons Laws of NY, Book 1, Statutes § 147).
Moreover, the history of CPL 270.15 weighs against defendant’s construction. CPL 270.15 "was included in the CPL in 1970 without any substantive change from the old Code of Criminal Procedure, which basically codified traditional common law practice” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 270.15, at 414 [1993]; see, Denzer, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 270.15, at 497 [1971]). It was a restructuring and simplification of what had been "a number of prolix provisions in the existing Code” (Commn Staff Notes, reprinted in Proposed NY Criminal Procedure Law § 140.15, at 209 [Thompson Co. 1967]) aimed at "establishing] a uniform procedure for the selection of trial jurors” (id.).
At common law, and under the former Code of Criminal Procedure, varying methods of jury selection were employed. In one, each individual juror was put on the stand, questioned, and subject to both prosecution and defense challenges for cause and then peremptory challenges. If the juror was acceptable to both parties, the juror was immediately sworn, and no longer subject to peremptory challenge by either party (see, e.g., People v Miles, 143 NY 383; People v Carpenter, 102 NY 238, 243). Another method, sometimes called the full box method, also involved individual questioning of jurors. The individual jurors could be excused for cause after questioning, or, if they survived challenges for cause, be seated in the jury box, but not sworn. Once 12 jurors were thus seated in the box, the parties — first the People, then the defense — exercised peremptory challenges (see, e.g, People v McQuade, 110 NY 284). The defendant retained the right to " 'challenge a person who appears as a juror at any time before he is sworn’ ” (People v Fromen, 284 App Div 576, 578, quoting People v Carpenter, 36 Hun 315, 317), and "no juror [was] to be sworn until the jury [was] complete” (id., at 579; but see, People v Mancuso, 26 AD2d *528 292, mod 22 NY2d 679). An apparent third method of jury selection involved collective examination and challenges to an entire array of jurors (see, e.g., People v Grieco, 266 NY 48, 54).
When these methods were challenged by criminal defendants, they were upheld as fair and valid under the former Code of Criminal Procedure (see, People v Williams, 26 NY2d 62; People v Grieco, 266 NY 48, supra; People v Miles, 143 NY 383, supra; People v McQuade, 110 NY 284, supra); except in two circumstances: (1) when the prosecution was allowed to exercise a peremptory challenge to a juror whom it had already accepted (see, People v Williams, supra; People v McQuade, supra); or (2) when the method announced at the beginning of jury selection was deviated from so as to block use of peremptory challenges that would have been available had the initial method been adhered to (see, People v Carpenter, supra, at 247; People v Mancuso, 26 AD2d 292, mod 22 NY2d 679, supra; People v Fromen, supra).
In People v McQuade (supra), the Court, tracing the history of peremptory challenges, observed that although many of the advantages of the peremptory challenge had historically been the defendant’s, "the requirement * * * that the People shall challenge first, is the only substantial advantage remaining to a defendant” (id., at 294). This advantage confers a benefit on the defendant; it "relieves the defendant from using his challenges in cases where the juror challenged by the prosecution was also unacceptable to the defendant, and thereby preserves his challenges to be used in other cases” (id.). It also protects the defendant by prohibiting the prosecution from "acquiring] information as to what jurors are satisfactory to the defendant, and excluding] them from the panel for that reason” (id., at 295). We have consistently held that the advantage retained by defendants in jury selection, and its resulting benefit and protection to defendants, is satisfied by the juror-by-juror method of exercising peremptory challenges because "in no case and in no manner [is a defendant engaging in juror-by-juror peremptory challenges] compelled to challenge until after the prosecution had fully exhausted its right” (see, People v Miles, 143 NY 383, 386, supra; see also, People v Carpenter, 102 NY 238, 248, supra).
The procedure adopted in CPL 270.15 made several technical changes to the process of jury selection. Most importantly, it eliminated the individual under oath questioning of prospective jurors, requiring instead that prospective jurors be placed in the box and sworn to tell the truth together and collectively *529 questioned by the court. Thus, the new code introduced a uniform procedure of examining jurors "with a view toward speeding up the often prolonged, time-consuming task” (Preiser, Practice Commentaries, op. cit).
The new code also manifestly retained the one persistently protected and enunciated rule of jury selection — that the People make peremptory challenges first, and that they never be permitted to go back and challenge a juror accepted by the defense. Thus, the statute says that "[t]he people must exercise their peremptory challenges first and may not, after the defendant has exercised his peremptory challenges, make such a challenge to any remaining prospective juror who is then in the jury box” (CPL 270.15 [2]). This historical rule was not violated when the parties were required to make peremptory challenges juror by juror (see, People v Miles, 143 NY 383, 386, supra; see also, People v Carpenter, 102 NY 238, 248, supra), and there is absolutely no evidence in the legislative history of CPL 270.15 of an intent to overrule those cases. Nor is there evidence of an intent to expand "the only substantial advantage remaining to a defendant” (People v McQuade, 110 NY 284, 294, supra) by requiring in all cases that the prosecutor exercise all its challenges to an entire array before the defendant exercises any.
Based on the foregoing, we hold that as long as the prosecution exercises its peremptory challenges before the defendant, and in no case challenges a prospective juror "remaining in the jury box” after both parties have had a chance to peremptorily challenge that juror, the requirements of CPL 270.15 are satisfied. This construction dovetails with the flexibility built into CPL 270.15 (1) (c) which allows individual or collective questioning of jurors by the parties, and CPL 270.15 (3), which gives Trial Judges the discretion to fill the jury box with any number of jurors after the first round. It also avoids arbitrarily vesting criminal defendants whose Trial Judges use the efficient procedure of removing sworn jurors from the box and questioning more than are needed to complete the jury in later rounds of jury selection with a tactical advantage unavailable to defendants whose Trial Judges use a more cumbersome method of selecting a jury. At the same time, this construction respects both the language and history of subdivision (2).
It is thus apparent that the method of jury selection employed in People v Alston was permissible. The People exercised their peremptory challenges before the defendant, and in no case challenged a juror they had already accepted. Defendant’s other contention is without merit.
*530 Likewise, the juror-by-juror method of exercising peremptory challenges employed in People v Morris was also permissible. The legislative history to CPL 270.15 (2) manifests no intent to give criminal defendants a tactical advantage in the first round that could be eliminated by the trial court in later rounds at its discretion. Here, the prosecution made all its peremptory challenges to each prospective juror before the defense, and in no case went back and exercised a peremptory challenge to any prospective juror who remained in the box after being accepted by both sides. Defendant Morris thus received all the tactical advantages and procedural protection the Legislature intended to confer upon him. Therefore, although the one-by-one exercise of peremptory challenges directed by the trial court in People v Morris is apparently anomalous and quite clearly counterproductive to the legislative goal of swift and efficient jury selection, we cannot say it is barred by the statute.
Accordingly, the orders of the Appellate Division in People v Morris and People v Alston should be affirmed.